IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ARC'TERYX EQUIPMENT, INC., a British Columbia corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WESTCOMB OUTERWEAR, INC., a British Columbia corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:07-CV-59 TS |

This matter comes before the Court on Defendant's Motion for Summary Judgment. Defendant seeks judgment that its products do not infringe United States Design Patent No. 513,715 (the "715 Patent"). For the reasons set out below, the Court will grant the Motion.

I. BACKGROUND

On January 24, 2006, the United States Patent and Trademark Office issued the 715 Patent to inventors Thomas Walker Clarke Fayle and Thomas Routh. The inventors subsequently assigned the 715 Patent to Plaintiff. The 715 Patent is a design patent which covers an ornamental design for a curvilinear zipper. Plaintiff brought suit against Defendant alleging that Defendant's Mirage Jacket infringes on the 715 Patent. Defendant answered, arguing that its

1

Mirage Jacket does not infringe and that the 715 Patent is invalid or unenforceable. Defendant also brought a counterclaim against Plaintiff for intentional interference with economic relations. Defendant now seeks summary judgment that its Mirage Jacket does not infringe on the 715 Patent.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## III.  DESIGN PATENT INFRINGEMENT STANDARD

The Federal Circuit, in *Egyptian Goddess, Inc. v. Swisa, Inc.*,[4] recently clarified "the appropriate legal standard to be used in assessing claims of design patent infringement."[5]  The court held "that the 'point of novelty' test should no longer be used in the analysis of a claim of

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[4] ---F.3d---, 2008 WL 4290856 (Fed. Cir. 2008) (en banc).

[5] *Id*. at *1.

design patent infringement."[6]  The court held "that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed."[7]  Under the ordinary observer test,

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.[8]

"In applying the ordinary observer test, a court is to compare the [patented design] to the accused design to determine whether 'the designs have the same general visual appearance, such that it is likely that the purchaser [(or the ordinary observer)] would be deceived into confusing the design of the accused article with the patented design.'"[9]  "Specifically, the question to be addressed in applying the ordinary observer test is whether the ordinary observer would be deceived by the accused design because it is substantially similar to the patented design."[10]

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer . . . .  In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art . . . .  Where there are many examples of prior art designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become

---

[6]*Id.* at *12.

[7]*Id.*

[8]*Gorham Co. v. White*, 81 U.S. 511, 528 (1871).

[9]*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324 (Fed. Cir. 2007) (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1118 (Fed. Cir. 1998)).

[10]*Id.*

significant to the hypothetical ordinary observer who is conversant with the prior art.[11]

The Federal Circuit went on to consider whether trial courts should conduct claim construction in design patent cases. The court noted that "a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'"[12] Therefore, "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."[13] With these standards in mind, the Court turns to the analysis of Defendant's Motion.

## IV.  DISCUSSION

As noted above, the 715 Patent is a design patent which covers an ornamental design for a curvilinear zipper. Plaintiff's original opposition to Defendant's Motion for Summary Judgment was based, at least in part, on the fact that the Court had yet to construe the 715 Patent. In light of the Federal Circuit's decision in *Egyptian Goddess*, it is unnecessary to construe the 715 Patent by providing a detailed verbal description of the claimed design. Rather, the Court will rely upon the illustrations set out in the 715 Patent, as they better represent the claimed design.

Plaintiff also argued that the Court should wait for the Federal Circuit's ruling in *Egyptian Goddess* before ruling on the Motion. This argument is now moot.

---

[11]*Egyptian Goddess, Inc.*, 2008 WL 4290856, at * 12.

[12]*Id*. at * 13.

[13]*Id*.

The Court, therefore, will turn to Defendant's argument that its Mirage Jacket does not infringe the 715 patent under the ordinary observer test. The parties agree that the "ordinary observer" in this situation is an outdoor clothing customer who is more discerning that an average retail shopper.

An ordinary observer of the 715 Patent would be left with the impression that the zipper contains two sections: a straight section which extends from the bottom of the zipper to the chest area and a diagonal section extending from the chest area to the collar. While it is true that the 715 Patent contains a second straight section which begins and ends in the collar area, that second straight section is not immediately apparent to an ordinary observer. An ordinary observer of Defendant's product would be left with the impression that Defendant's zipper consists of three sections: a straight section which extends from the bottom of the zipper to the stomach area, a short diagonal section in the stomach area, and a second straight section extending from the stomach area to the top of the collar.

Within this general description of the two zippers, there a several differences worth noting. First, an ordinary observer would be left with the impression that the 715 Patent contains only two sections—a straight section and a diagonal section. An ordinary observer of Defendant's Mirage Jacket, on the other hand, would be left with the impression that the jacket contains three sections—a straight section, a diagonal section, and a second straight section.

Second, there are differences in the placement of the diagonal sections of the zipper. The 715 Patent discloses a diagonal section which begins in the chest area of the jacket and extends to the collar. Defendant's design places the diagonal section in the stomach area of the jacket. The diagonal section of Defendant's design is not in the chest area of the jacket and does not

extend to the collar area, but rather curves back into a straight section which then extends to the collar.

Third, there are differences in the length of the diagonal sections of each design.  The 715 Patent discloses a design where the diagonal section makes up approximately one-third of the zipper length.  The diagonal section of Defendant's Mirage Jacket, on the other hand, is limited to a relatively small section.

Finally, there are differences in the lengths of the straight sections.  The 715 Patent discloses a straight section which makes up approximately two-thirds of the zipper length.  Defendant's Mirage Jacket, however, discloses two straight sections, which, when combined, make up nearly all of the zipper length.

These difference become important when considering the prior art.  The parties agree that the prior art in this case consists of German patent DE 40 18 356 (DE 356 Patent) and Lowe Alpine's Black Ice Jacket.  The DE 356 Patent discloses a long straight section which begins in the middle of a jumpsuit and continues to the upper chest area before it curves into a short diagonal section.  The diagonal section curves back into a straight section to the end of the zipper.  The Lowe Alpine Black Ice Jacket has a long straight section which makes up most of the jacket before it curves into a short diagonal section which begins at the bottom of the collar and ends at the top of the collar.

In reviewing the prior art and comparing it to the 715 Patent, it is the number, length, and placement of the straight and diagonal sections which differentiate each of the items.  The 715 Patent is much closer to the Lowe Alpine Black Ice Jacket in that they both contain one straight and one diagonal section.  Defendant's Mirage Jacket, on the other hand, is similar to the DE 356

Patent in that both designs contain a straight section, curving into a diagonal section, which curves into a second straight section.

The Court finds, based on the differences set forth above, that no reasonable jury could find that an ordinary observer, familiar with the prior art, would be deceived into confusing the design of Defendant's Mirage Jacket with the 715 Patent. As a result of this ruling, the Court need not address Defendant's arguments on the validity of the 715 Patent.

## V. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 44) is GRANTED.

DATED   November 3, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge